## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CRYSTAL M.,[1]

      Plaintiff,

v.

    Case No. 3:25-CV-00081-NJR

FRANK J. BISIGNANO, Commissioner
of Social Security,[2]

      Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Crystal M. ("Plaintiff") appeals to the district court from a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is affirmed.

### PROCEDURAL HISTORY

Plaintiff applied for SSI in September 2021, alleging a disability onset date of February 6, 2021. (Tr. 174). Plaintiff based her claim on her chronic back issues, cauda equina syndrome, atrophy of her right kidney, obesity, sleep apnea, chronic bronchitis and depressive disorder. (Tr. 20, 85). The application was initially denied on February 14, 2022. (Tr. 82-86). Plaintiff timely requested reconsideration and received a decision affirming the previous denial on October 25, 2022. (Tr. 107-10). She then requested a

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the accompanying Advisory Committee Notes.

[2] Plaintiff named as a defendant the Commissioner of Social Security. Frank J. Bisignano is the current Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

hearing. Plaintiff, along with her non-attorney representative, appeared before Administrative Law Judge ("ALJ") Koren Mueller on June 22, 2023. (Tr. 35-63).

The ALJ issued an unfavorable decision on September 25, 2023, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act because she had the residual functional capacity ("RFC") to perform sedentary work with slight physical limitations, and she could perform a significant number of jobs in the national economy. (Tr. 18-29). Plaintiff subsequently sought review from the Appeals Council, which denied Plaintiff's request, rendering the ALJ's decision final for purposes of judicial review. (Tr. 1-6).

Plaintiff now appeals the ALJ's decision directly to this Court, raising two principal arguments: (1) the ALJ's determination of Plaintiff's RFC failed to account for the limitation caused by her ongoing fecal and urinary incontinence and (2) the ALJ incorrectly discounted Plaintiff's incontinence by engaging in a flawed credibility analysis. (Doc. 13). The Commissioner timely filed a brief in opposition, (Doc. 21), and Plaintiff filed a reply (Doc. 22).

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The scope of review is limited and, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" *Id.* Accordingly, this Court is not tasked with determining whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were

supported by substantial evidence and whether the ALJ made any errors of law. *Lopez ex
rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines
substantial evidence as "more than a mere scintilla" and sufficient "relevant evidence as
a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,
587 U.S. 97, 103 (2019) (internal citations omitted).

In reviewing for substantial evidence, the entire administrative record is taken into
consideration, but the reviewing court may not "reweigh the evidence, resolve debatable
evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's
determination[.]" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "An ALJ need not
specifically address every piece of evidence, but must provide a 'logical bridge' between
the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021). When
an ALJ ignores an entire line of evidence contrary to the ruling, however, it becomes
impossible for a district court to assess whether the ruling rests on substantial evidence.
*Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 917
(7th Cir. 2003). Ignoring evidence in this way requires the district court to remand to the
agency. *Golembiewski*, 322 F.3d at 917.

## DISABILITY UNDER THE SOCIAL SECURITY ACT

To qualify for SSI, a claimant must be disabled within the meaning of the
applicable statute. Under the Social Security Act, a person is disabled if he or she is
"unable to engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities demonstrated by medically acceptable diagnostic techniques. *See Id.* § 1382c(a)(3)(d). "Substantial gainful activity" is work activity that is both substantial and gainful and involves performing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972.

An ALJ considers five questions in determining whether a claimant is disabled: (1) Is the claimant presently engaging in substantial gainful activity? (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity? (4) Does the claimant's residual functional capacity leave him or her unable to perform his or her past relevant work? and (5) Is the claimant unable to perform any other work existing in significant numbers in the national economy? *See* 20 C.F.R. § 416.920.

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). A negative answer at any step, other than at step three, precludes a finding of disability. *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984*). The claimant bears the burden of proof at steps one through four. *Milhem v. Kijakazi,* 52 F.4th 688, 691 (7th Cir. 2022). Then the burden shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the specific arguments raised by Plaintiff.

## I.    Relevant Medical Records

Plaintiff furnished extensive medical records in support of her disability application. Concerning her physical ailments, Plaintiff reported to the emergency room four times in the middle of February 2021, corresponding to the alleged onset date. (Tr. 384). She reported worsening back pain, numbness in her legs, and an inability to stand and move on her own. She also reported urinary incontinence and spasms. (*Id.*). She was prescribed pain medications (gabapentin and muscle relaxants) and physical therapy and also was referred for an MRI. (*Id.*).

At a physical therapy appointment on March 11, 2021, Plaintiff stated that her pain had improved somewhat, but she still reported numbness in her legs, which caused her to only be able to walk 5-6 feet at the appointment. (*Id.* at 373). The Physical Therapist also remarked that Plaintiff needed help with "dressing, bathing, toileting, cooking, [and] transfers." (*Id.* at 377).

On April 7, 2021, Plaintiff reported to Christian Hospital for an MRI to check for neural compression. (*Id.* at 433). She complained of ongoing pain radiating from her lower back to her legs. Based on the MRI, the treating physician determined that she had "extensively large disc extrusion at L4-5 bilateral L5 radiculopathy" and cauda equina syndrome due to her "having difficulty with bowel and bladder." (*Id.* at 436). Assessing

the matter as urgent, the physician recommended she be admitted to the hospital for a

lumbar microdiscectomy. (*Id.*). The surgery apparently was successful, and Plaintiff was

discharged the following day. (*Id.* at 438). Post-operative MRI scans in July and August

2021 confirmed that the "previous large ventral extruded disc is no longer seen" but

noted the presence of "asymmetric thickened roots sheaths" and "[c]ircumferential

enhancing soft tissue." (*Id.* at 410, 522).

On July 26, 2021, Plaintiff reported to a gastroenterologist at Christian Hospital for

abdominal pain. (*Id.* at 413). The provider conducted an endoscopy, which confirmed

reflux esophagitis and a gastric ulcer, which pathology confirmed was benign. (*Id.* at 418-

21). Plaintiff did not complain of incontinence issues. She had another gastroenterology

appointment on September 21, 2021. On that occasion, she reported bloating followed by

eating, despite taking various reflux medications. (*Id.* at 871). She did not mention

incontinence at that appointment. The same was true for Plaintiff's gastroenterologist

visits on October 10, 2022, January 11, 2023, and April 12, 2023. At those appointments,

she reported bloating, gastroesophageal reflux disease (GERD) (*Id.* at 849, 856, 862). The

notes from the April 12, 2023 visit indicate that Plaintiff was "[p]ositive for change in

bowel habit," but little else is recorded about that report. (*Id.* at 852).

Plaintiff also provided records from approximately 20 visits to her primary health

care providers between 2020 and 2022. (*Id.* at 595-97, 607-08, 615-16, 622, 635, 657, 675,

683-84, 689, 694, 696, 703, 713, 717-18, 719, 724-27, 731-32, 733-37, 738-741, 742-45, 747).

Plaintiff reported a variety of ailments during these appointments. In June 2020, at the

start of the provided records, Plaintiff reported that her symptoms of anxiety and

depression, which she had been treating with several psychiatric medications, had substantially improved. (*Id.* at 738-41). Her reports were relatively consistent through 2020 until the emergence of her back problems in early 2021. (*Id.* at 726-27 731, 736). In addition to her anxiety and depression, her chief issues were renal atrophy of one kidney, hypothyroidism, and obesity. (*Id.* at 428). Beginning in February 2021, her reports to her primary care providers documented the back issue that ultimately led to her April 2021 surgical procedure. On February 25, 2021, she reported an overactive bladder and was referred to a urologist. (*Id.* at 713). However, on May 17, 2021, she described an "overall improvement" in her urinary symptoms and reported only experiencing urinary incontinence at night. (*Id.* at 310).

During another appointment that May, she complained of stomach pains but told the primary care provider that she had talked with her spinal surgeon about it already and he told her that she may need to visit a gastroenterologist. (*Id.* at 703). The note also mentions "defecation straining" and stated that she had made an appointment with a gastroenterologist. (*Id.* at 707). Plaintiff does not appear to have raised that concern with her primary care provider after that date. Instead, subsequent appointments appear to have focused primarily on her anxiety and depression and, in mid-2022, dealing with a pressure ulcer. (*E.g.*, *id.* at 622-23, 643, 650-51, 683).

At a follow-up appointment on October 6, 2021, Plaintiff reported "difficulty having a bowel movement and still having incontinent [sic] issues." (*Id.* at 696). Upon physical examination, the treating physician wrote that "pt needs to push to go to BM - seen by GI," and Plaintiff received a referral to a colorectal surgeon. (*Id.* at 701). The

treatment notes do not include further details about this ailment or records indicating that Plaintiff visited a colorectal surgeon.

## II.    State Agency Examiners

Plaintiff was examined by several doctors for the state agency. On January 13, 2022, she was evaluated by Dr. Raymond Leung. (*Id.* at 595). Leung noted that Plaintiff was in a wheelchair and that she reported a history of a herniated disc, cauda equina syndrome, and numbness in her legs. He reported that Plaintiff was morbidly obese and stated that she could not walk because of weakness in her legs. (*Id.* at 596-97). On physical examination, Leung observed no signs of muscle atrophy or spasm and noted Plaintiff had no difficulty getting on or off the exam table. (*Id.* at 597). He also noted that her leg strength bilaterally was 4+/5. (*Id.*). He did not offer an opinion regarding her functional limitations.

On September 27, 2022, Plaintiff was evaluated by Dr. Adrian Feinerman. (*Id.* at 824). He reported that Plaintiff had complained of localized lower back pain since February 2021 due to degenerative disc disease and was diagnosed with cauda equina syndrome. (*Id.* at 825). He also wrote that Plaintiff "complains of fecal and urinary incontinence." (*Id.*). On physical examination, he reported that Plaintiff's ambulation was "normal" without an assistive device and she was able to walk 50 feet. (*Id.* at 829). He also noted that Plaintiff had "moderate" difficulty tandem walking, standing on her toes and heels, squatting and arising, and "mild" difficulty getting on and off the exam table, needing an assistance device, and difficulty arising from a chair. (*Id.* at 830). Dr. Feinerman diagnosed Plaintiff with degenerative disc disease, cauda equina

syndrome, and hypothyroidism and assessed her as "able to sit, stand, walk, hear, speak, lift, carry, handle objects, and can handle funds on [her] own behalf." (*Id.* at 831).

Plaintiff's file also was reviewed by state examiners Drs. Kathleen Treanor and Judith Kelley in January and October 2022, respectively. (Tr. 68-69, 80). Treanor assessed Plaintiff as capable of standing for a total of four hours a day and capable of occasionally performing a variety of other mobility tasks. (*Id.* at 68-69). Kelley offered a similar assessment. (*Id.* at 77-78).

## III. Evidentiary Hearings

Plaintiff was 41 years old the date she filed her application for SSI. (*Id.* at 28). She appeared via video before ALJ Koren Mueller on June 22, 2023, where she was represented by a non-attorney. (Tr. 37-63). Vocational expert Delores E. Gonzalez also testified by video. (*Id.* at 58).

Plaintiff testified that she only attended school through the tenth grade and does not have a GED or other certification. (*Id.* at 46). She lives with her boyfriend, who is disabled, as well as her son. (*Id.* at 43). She has given up driving due to her leg pain. (*Id.* at 49-50).

Plaintiff further testified that her back issues were connected to a series of car wrecks she experienced over the previous five years. (*Id.* at 43). One day, she woke up and could not walk. She has taken to using a wheelchair regularly because if she walks more than a few steps, her legs feel like "jiggly Jell-O." (*Id.* at 45). Only rarely does she get around without the assistance of a cane or a wheelchair. (*Id.*). Her pain inhibits her ability to sleep, but her medication is able to reduce the pain by approximately 75 percent.

(*Id.* at p. 47, 49). She also reported losing her grip on objects because her hands go numb; she cannot lift anything heavier than a gallon of milk. (*Id.* at 51).

Plaintiff also testified about her need for assistance using the bathroom. Specifically, when she needs to defecate, she "cannot go on [her] own" and requires assistance performing a "manual evacuation," as a doctor apparently demonstrated for her. (*Id.* at 53). Sometimes, she has accidents because her rectal area is "completely numb," and she cannot feel it. (*Id.*). Although her urinary incontinence is "really bad," she does not require assistance urinating. (*Id.* at 46, 53). She reported that her doctors were waiting for the "two year healing mark" before deciding whether she needed any follow-up procedures to address her incontinence issues. (*Id.* at 46, 53).

Gonzales, the vocational expert, testified that Plaintiff's past work as a self-checkout host equated to a retail cashier/stocker/storekeeper job listing and was light, semi-skilled work that was medium as performed. (Tr. 58). When asked by the ALJ whether an individual with the same age, education, and past experience as Plaintiff, who also was subject to certain additional exertional limitations, could perform any of Plaintiff's past work, Gonzales dismissed the possibility but noted that there were other jobs in the national economy such an individual could perform. (*Id.* at 59). These included printed circuit board assembler, document preparer, and office helper, which all are sedentary roles. (*Id.* at 60).

On cross-examination, Plaintiff's representative inquired whether assistance in using the restroom would be an acceptable accommodation in the workplace. Gonzales testified that such assistance would not be acceptable. (*Id.* at 61.).

### DECISION OF THE ALJ

In reaching her decision, the ALJ considered the testimony from Plaintiff and the impartial vocational expert. She also considered Plaintiff's medical records, the observations of Drs. Leung and Feinerman, and the opinions of the other reviewing doctors.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since September 20, 2021, the date of her application for SSI. (Tr. 20). At step two, the ALJ determined that Plaintiff's degenerative disc disease of the lumbar spine with stenosis, status-post lumbar fusion due to cauda equina syndrome, morbid obesity, obstructive sleep apnea, and chronic bronchitis constituted severe impairments. (*Id.*). She recognized that the record demonstrated Plaintiff suffered from hypothyroidism, mild esophagitis, a gastric ulcer, right renal atrophy, renal stones, and GERD, but concluded that these were non-severe impairments because there was nothing to suggest they prevented her from performing sedentary work activities. (*Id.*). At step three, the ALJ found that Plaintiff's impairment or combination of impairments (both physical and mental) did not meet or medically equal the severity of one of the impairments listed in the regulations. (*Id.* at 21).

As to her physical impairments, the ALJ reasoned that there is no persuasive evidence that Plaintiff is unable to ambulate effectively while using a cane, because at several points, her treatment notes describe her gait as normal even without an assistive device. (*Id.*). She also observed that Plaintiff's anxiety and depression do not cause more than minimal limitation to her ability to perform basic mental work activities and are

non-severe mental impairments. (*Id.*). Regarding her mental capacity, the ALJ assessed that Plaintiff had no limitations in understanding, remembering or applying information, and interacting with others, and only mild limitations in concentrating, persisting, or maintaining pace, and in adaptation or self-management. (*Id.* at 21-22).

The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform sedentary work, with the following limitations: Plaintiff (1) can only occasionally push and pull with her bilateral lower extremities; (2) should never be required to climb ladders, ropes or scaffolds; (3) can occasionally climb ramps and stairs; (4) can occasionally balance; (5) should avoid extreme cold, wetness and hazards, such as unprotected heights and dangerous machinery; (6) should avoid concentrated exposure to fumes, odors, dust, gases and poorly ventilated areas; and (7) requires use of a cane when walking on uneven terrain. (*Id.* at 22).

In making this finding, the ALJ considered Plaintiff's testimony regarding her symptoms and found that her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (*Id.* at 23). The ALJ concluded, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*). In making this determination, the ALJ reviewed evidence suggesting that Plaintiff's back condition had improved after surgery, that she was able to ambulate effectively with a cane at medical appointments, and she performed adequately in a variety of mobility assessments performed by Dr. Feinerman. (*Id.* at 24-26). The ALJ also opined that Plaintiff's claim that she is unable to have bowel movements without manual

extraction is not supported by the record. The ALJ added that it is "not plausible that [Plaintiff] would have been released by her surgeon if she was actually having an issue this serious and she did not report this issue to her gastroenterologist when she was being treated for kidney stones and other GI issues related to abdominal pain in July 2021 (Exhibit 2F/13) [Tr. 415]."

At step four, the ALJ determined that Plaintiff is unable to perform the requirements of her past relevant work as a retail cashier, a stocker, and a storekeeper. (Tr. 27). The ALJ relied on the vocational expert's testimony that a person of Plaintiff's age, education, and work experience subject to the assessed RFC could not perform her past relevant work. (*Id.*). Finally, at step five, the ALJ concluded that, based on the testimony of the vocational expert, "considering [Plaintiff's] age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform." (*Id.* at 28). Specifically, the ALJ determined that Plaintiff could perform the roles of circuit board assembler, document preparer, and office helper. (*Id.*).

Considering all of the above, the ALJ found Plaintiff was not under a disability, as defined in the Social Security Act, from September 20, 2021, through September 28, 2023, the date of her decision. (*Id.* at 29).

### DISCUSSION

## I.    Did the ALJ's assessment of Plaintiff's RFC fail to account for Plaintiff's alleged fecal and urinary incontinence?

Plaintiff first argues that ALJ failed to adjust the RFC to account for the evidence

of her urinary and fecal incontinence. She maintains that the ALJ was required to consider
the limiting effects of those symptoms on the RFC and sufficiently articulate her
reasoning. In response, the Commissioner notes that the ALJ's burden of explanation is
relatively minimal and that the ALJ articulated persuasively why she found Plaintiff's
account of her limitations unpersuasive. This included evidence that some of Plaintiff's
reports of difficulties in walking, standing, or gripping conflicted with the results of her
consultative exams and the fact that she did not report incontinence symptoms to many
of her providers, including her gastroenterologist.

The RFC is a measure of what an individual can do despite the limitations imposed
by her impairments. *Joseph W. v. O'Malley*, No. 23-3084, 2024 WL 4143613, at *4 (S.D. Ill.
Sept. 11, 2024) (citing 20 C.F.R. § 404.1545(a)). It is "a function-by-function assessment
based upon all of the relevant evidence of an individual's ability to do work-related
activities," *id.*, and must be supported by substantial evidence. *Clifford v. Apfel*, 227 F.3d
863, 870 (7th Cir. 2000).

"When determining the RFC, an ALJ must incorporate all of a claimant's
functional limitations supported by the medical record." *Streikus v. O'Malley*, No. 22-2484,
2024 WL 983568, at *4 (7th Cir. Mar. 7, 2024) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th
Cir. 2015)). The Seventh Circuit has "repeatedly explained that there is 'no magic words
requirement' in crafting the RFC . . . , as long as [it] adequately account[s] for the
claimant's demonstrated limitations found in the record." *Id.*; *see also Crump v. Saul*,
932 F.3d 567, 570 (7th Cir. 2019).

As discussed above, the Court's review at this stage is limited to whether the ALJ's

decision was "the result of an error of law or [] is not supported by substantial evidence." *Rabdeau v. Bisignano*, 155 F.4th 908, 912 (7th Cir. 2025) (quoting *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022)). Plaintiff's front-line position is that the RFC — by failing to include a limitation for off-task time for toileting with assistance — is not supported by substantial evidence. The Court disagrees.

To start, it is clear that the ALJ recognized and grappled with Plaintiff's reported urinary and fecal incontinence. She recognized Plaintiff's report of "bowel and bladder issues due to cauda equina syndrome," but went on to recognize that Plaintiff's statements regarding the "intensity, persistence and limiting effects of these symptoms are inconsistent with the evidence in the record." (Tr. 23). Notably, the ALJ cited records indicating that Plaintiff's "urinary frequency" issue "was noted to have resolved by June 10, 2021." (*Id.* at 24 (citing Tr. 311)). Contrary to Plaintiff's concern that the ALJ offered no explanation for not treating Plaintiff's reported bowel issues as functional limitations, the ALJ devoted a whole paragraph to the issue:

> Regarding the claimant's allegation that she is unable to have bowel movements without manual extraction is not supported in the record. It is not plausible that she would have been released by her surgeon if she was actually having an issue this serious and she did not report this issue to her gastroenterologist when she was being treated for kidney stones and other GI issues related to abdominal pain in July 2021 (Exhibit 2F/13). There is nothing convincing in the record to suggest that the claimant is incapable of performing a restricted range of sedentary work activity from a physical or a mental health standpoint.

(T. 26).

Plaintiff pushes back that the ALJ (1) was not qualified to assume her provider would not have released her from his care if she was experiencing incontinence and

(2) cited no evidence contradicting Plaintiff's reported symptoms.

It is well-settled that ALJ's are obligated "to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009) (citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). At the same time, however, "[a]n ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010).

The issue before the ALJ was a classic credibility determination: did Plaintiff's reported incontinence amount to a functional limitation when weighed against other evidence in the record? "So long as an ALJ gives specific reasons supported by the record," a court will not overturn their assessment of an individual's credibility "unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Plaintiff's first critique of the ALJ's reasoning is that she was impermissibly "playing doctor" by making medical judgments about what her provider would or would not have done if she was experiencing incontinence. The Seventh Circuit, to be sure, has cautioned that ALJs "must not succumb to" the temptation to reason as if they were a medical provider. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

However, the Court does not read the ALJ's statement here to reflect an attempt to "play doctor." In context, it is evident the ALJ was attempting to highlight the dearth of medical records corroborating Plaintiff's reported symptoms. In making credibility

determinations, evidence of treatment (or a lack thereof) is undoubtedly relevant.
*See Deborah M.*, 994 F.3d at 789; *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming
adverse credibility finding based on ALJ's conclusion that claimant's treatment was
"relatively conservative" and therefore inconsistent with his complaints); *Prochaska v.
Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("An ALJ should consider elements such as
objective medical evidence of the claimant's impairments, the daily activities, allegations
of pain and other aggravating factors, "functional limitations," and treatment (including
medication)."). And the relevance of this evidence is reflected in the Social Security
regulations. *See* 20 C.F.R. § 416.929(c) ("Factors relevant to your symptoms, such as pain,
which we will consider include . . . (v) Treatment, other than medication, you receive or
have received for relief of your pain or other symptoms").

The ALJ's rationale for discounting Plaintiff's claimed incontinence could have
been explained in greater detail, but that deficiency is immaterial here. The ALJ "need
not discuss every detail in the record as it relates to every factor." *Grotts v. Kijakazi*,
27 F.4th 1273, 1278 (7th Cir. 2022). The thrust of the ALJ's reasoning is sufficiently
apparent. She viewed Plaintiff's recent failures to report or seek treatment for her alleged
incontinence to be significant. The dearth of this evidence is readily apparent from the
Court's independent review of Plaintiff's medical records.

Plaintiff did report "incontinence" (whether fecal or urinary is unspecified) when
she reported to the hospital in April 2021, prior to her discectomy surgery (*Id.* at 457, 545).
She also mentioned "incontinent" issues at an appointment with her primary care
provider that October. (*Id.* at 696). The significance of that particular record is somewhat

difficult to decipher, however. The provider note mentions that Plaintiff's back pain did
not feature incontinence as an associated symptom and states that her issue was that she
"needs to push to go to BM." (*Id.* at 700-01). But there is also mention of a referral to a
colorectal surgeon. (*Id.* at 701). The Court was unable to locate in the record any evidence
that Plaintiff visited a colorectal surgeon. What is in the record are notes from Plaintiff's
repeated visits to a gastroenterologist, as recently as April 2023, documenting that she
suffers from GERD, but including no complaints of incontinence. (*Id.* at 849). She only
reported fecal incontinence on one other occasion: her consultative evaluation with Dr.
Feinerman on September 27, 2022. (Tr. 824-31).

Plaintiff pushes back that her reports of incontinence are "fully corroborated in the
medical records." (Doc. 22 p. 2). As evidence, she cites a complaint of numbness below
the waist from her visit to the emergency room on February 13, 2021 (Tr. 395), a March
2021 report of urinary incontinence (*id.* at 373), the April 2021 report discussed above *id.*
at 434), her October 2021 report to her primary care provider also discussed above (*id.* at
696) and her report to Dr. Feinerman. The first three immediately stand out as records
pre-dating Plaintiff's April 2021 surgical intervention. The October 2021 report post-
dating the surgery, at best, only vaguely constitutes a report of incontinence, for the
reasons explained above. And the final instance is a report to Dr. Feinerman, who was a
consultative examiner and not one of Plaintiff's treating physicians.

For a medical problem so debilitating as incontinence, it strikes the Court as
surprising, to say the least, that the medical records Plaintiff furnished in support of her
application — including recent visits to a gastroenterologist — do not feature recent

mention by Plaintiff of that symptom. Of course, it is well-established in this Circuit that an ALJ may not draw a negative inference about a Plaintiff's lack of treatment without exploring the reasons for that decision. *See Ray v. Berryhill*, 915 F.3d 486, 490–91 (7th Cir. 2019); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008). But the ALJ's determination here did not turn on Plaintiff's lack of treatment inasmuch as it turned on the clear inconsistency between her reported fecal incontinence and medical records demonstrating a lack of any *complaint* of that condition. As the ALJ observed, it is difficult to comprehend why Plaintiff, over the course of visits to her gastroenterologist in 2021, 2022, and 2023 never once mentioned fecal incontinence. Such a report surely would have been relevant in assessing the conditions she did report, which were abdominal bloating, a stomach ulcer, and GERD. (Tr. 850, 859, 862, 870). Moreover, provider records post-dating Plaintiff's surgery also include multiple instances where Plaintiff *denied* experiencing incontinence. In March, July, August, and September 2022, for instance, Plaintiff's back pain was documented as being associated with "no incontinence." (*Id.* at 677, 694, 796, 815). At the August visit (for wound debridement), Plaintiff reported specifically "no incontinence, no difficulty urinating, and no hematuria." (*Id.* at 796). And as the ALJ noted, Plaintiff reported to urologist an "overall improvement" in her urinary symptoms as early as June 2021. (*Id.* at 310). The ALJ was entitled to draw a negative inference about Plaintiff's credibility based on these records. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023) (affirming an adverse credibility finding where a claimant reported "at her hearing that her gastrointestinal symptoms were constant and untreatable" but "had herself reported some improvement

in prior years.")

Plaintiff testified before the ALJ that she had to wait for the "two year healing mark" before her providers would decide "if [I'm] going to need like any type of assistance" with the incontinence issue. (Tr. 45-46). Information about this waiting period is nowhere to be found in the medical records, however. The ALJ sufficiently explained why she did not account for Plaintiff's incontinence in her RFC, and nothing in the record convinces the Court that the ALJ's determination was "patently wrong." *Pufahl v. Bisignano*, 142 F.4th 446, 459 (7th Cir. 2025).

## II.    Did the ALJ fail to identify genuine inconsistencies between Plaintiff's subjective complaints and the record?

Next, Plaintiff argues that the ALJ violated SSR 16-3p by taking into account "personal observations" of Plaintiff instead of identifying actual inconsistencies between Plaintiff's testimony regarding her incontinence and the medical evidence. SSR 16-3p eliminated the use of "credibility" in assessing a claimant's reported symptoms and re-focused attention on the factors set out in 20 C.F.R. § 416.929(c)(3). *See* SSR 16-3p, 81 Fed. Reg. 14166-01 (March 16, 2016), *revised* 82 Fed. Reg. 49462-03 (Oct. 25, 2017)*; see also McCammond v. Colvin*, No. 15-6589, 2016 WL 3595736, at *2 (N.D. Ill. July 5, 2016). Plaintiff emphasizes portions of that ruling noting that an ALJ should "not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *See* SSR 16-3p, 82 Fed. Reg. 49462, 49467. However, Plaintiff does not identify any examples where the ALJ assessed her character for truthfulness. Instead, the ALJ did exactly what the ruling requires by assessing the intensity and persistence of Plaintiff's

reported symptoms by examining "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at 49464.

Plaintiff also argues that the ALJ failed to identify any actual inconsistencies between her testimony and the medical evidence. It is difficult to meaningfully distinguish this argument from Plaintiff's argument above that the ALJ's explanation for discounting her claimed incontinence was insufficient. For the reasons explained above, the ALJ's reasoning was sufficient to enable review, and her explanation for discounting Plaintiff's claimed symptoms was not "patently incorrect." The decision therefore will be affirmed.

## CONCLUSION

For these reasons, the Complaint (Doc. 1) filed by Plaintiff Crystal M. is **DENIED**, and the final decision of the Commissioner of Social Security denying her application for supplemental security income is **AFFIRMED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**IT IS SO ORDERED.**

**DATED:   January 26, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**